UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
MADELAINE CHOCOLATE
NOVELTIES, d/b/a THE MADELAINE
CHOCOLATE COMPANY,

              Plaintiff,

         - against -

GREAT NORTHERN INSURANCE COMPANY,

              Defendant.
----------------------------------------------------------- x

**MEMORANDUM & ORDER**

Docket No. 15 CV 5830 (RJD) (SMG) (GRB)

DEARIE, District Judge

This case involves a Hurricane Sandy-related insurance coverage dispute. Plaintiff Madelaine Chocolate Novelties, d/b/a The Madelaine Chocolate Company ("Madelaine") sues Great Northern Insurance Company ("Great Northern") for denying coverage for the majority of the damage sustained by Madelaine's facility ("the facility") as a result of the storm. The parties filed cross motions for summary judgment, see ECF Nos. 22 & 23, and the motions were referred to Magistrate Judge Brown for a report and recommendation. Judge Brown issued his report and recommendation on June 30, 2017, recommending that the Court deny Madelaine's motion for summary judgment and grant Great Northern's motion for summary judgment. See Report and Recommendation of Magistrate Judge Brown ("R&R"), ECF No. 25. Madelaine objected to the report and recommendation. See ECF No. 28. For the reasons set forth below, the Court adopts Judge Brown's report and recommendation, denies Madelaine's motion for summary judgment and grants Great Northern's motion for summary judgment.

## BACKGROUND

The court presumes the parties' familiarity with the procedural history, facts, and legal standard in this action, which have been set forth comprehensively in Judge Brown's report and recommendation, and are adopted herein. See R&R at 1-12.

## DISCUSSION

When a party objects to a magistrate judge's report and recommendation, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); see also 28 U.S.C. § 636(b)(1)(C). In ruling on the objection, the Court may rely on the magistrate judge's proposed findings and recommendation to whatever extent it chooses. United States v. Raddatz, 447 U.S. 667, 676 (1980).

Judge Brown concluded that the Great Northern insurance policy unambiguously excluded the damage floodwaters caused to the facility. R&R at 19. The facility was damaged by a so-called storm surge—defined in the report and recommendation as an "abnormal rise of water generated by the storm"—which the policy did not cover by virtue of its flood exclusion. R&R at 14. Judge Brown also determined that the policy's wind endorsement, which raised the deductible for windstorm-related losses, did not alter the unambiguous language of the policy that excluded damages from flooding. R&R at 22. The Court agrees.

1. The Policy Unambiguously Excludes Damages from Flooding

The Great Northern policy insures against "direct physical loss or damage to" the building and personal property of Madelaine, as well as business income losses, unless the cause of the loss or damage is expressly excluded by the policy. See Affidavit of Jason B. Lissy

2

("Lissy Aff."), Ex. 1 ("Policy") at M_3958, M_3987, ECF No. 23-5. The policy contains a number of exclusions, including an exclusion for losses from flooding which provides:

> This insurance does not apply to loss or damage caused by or resulting from:
>
> - waves, tidal water or tidal waves; or
> - rising overflowing or breaking of any boundary, of any natural or man-made lakes, reservoirs, ponds, brooks, rivers, streams, harbors, oceans or any other body of water or watercourse, whether driven by wind or not, regardless of any other cause or event that directly or indirectly:
>
> - contributes concurrently to; or
> - contributes in any sequence to, the loss or damage, even if such other cause or event would otherwise be covered.

Policy at M_3974 (emphasis in original).

Numerous cases have determined that similar provisions exclude damage from hurricane-related storm surges. The Second Circuit, in a recent summary order, stated that "[t]he inundation of sea water resulting from Sandy's storm surge is a 'flood' within the meaning" of a comparable flood exclusion of an insurance contract. Nat'l R.R. Passenger Corp. v. Aspen Specialty Ins. Co., 661 F. App'x 10, 13 (2d Cir. 2016). This Court previously reached the same conclusion in a case arising from Hurricane Sandy where an insurance policy contained a similarly-worded flood exclusion. See New Sea Crest Health Care Ctr., LLC v. Lexington Ins. Co., No. 12 CV 6414 RJD RLM, 2014 WL 2879839, at *3 (E.D.N.Y. June 24, 2014) ("The policies are unambiguous that a storm surge is a type of flood. . . . A 'storm surge' is little more than a synonym for a 'tidal wave' or wind-driven flood. . . . Thus, the policy definition makes it doubly clear that a storm surge is a type of flood under the policy. . . .") (citation omitted). The Court agrees with Magistrate Judge Brown that the policy's definition of flood encompasses a storm surge.

2. <u>The Wind Endorsement Does Not Alter the Flood Exclusion or Create Ambiguity</u>

Madelaine argues that, notwithstanding the flood exclusion, the wind endorsement attached to the end of the policy provides that any damage, such as a storm surge, for which wind was contributing cause is covered by the policy. Alternatively, Madelaine argues that the policy is ambiguous regarding coverage, and the ambiguity must be resolved in favor of coverage. <u>See</u> <u>Belt Painting Corp. v. TIG Ins. Co.</u>, 100 N.Y.2d 377, 383 (2003). The Court disagrees.

As Magistrate Judge Brown determined, the windstorm endorsement addresses the amount of the deductible and does not conflict with the flood exclusion or create an apparent ambiguity. Like other deductible endorsements, it exists "to shift some of the insurer's risk (that is, covered risk) to the insured, which is accomplished by setting a limit on the value of covered losses below which the insurer is not obligated to pay." <u>Penthouse Owners Association, Inc. v. Certain Underwriters at Lloyds, London</u>, 612 F.3d 383, 387 (5th Cir. 2010). The anti-concurrent language in the endorsement is meant to "ensure that an insured cannot escape the applicability of the higher deductible for windstorm and hail damage simply because other weather events (with lower deductibles) contributed to the loss. . . . The deductible endorsement does not create or extend coverage." <u>Id.</u> at 387-88.

The flood exclusion is unambiguous in its limitation of coverage for waves, tidal water, tidal waves and overflowing water that is driven by wind. Because the damage to the facility is the result of an excluded peril and not the covered peril "windstorm," the terms of the windstorm endorsement are not applicable.

## CONCLUSION

The Court adopts the report and recommendation of Magistrate Judge Brown in its entirety. Great Northern's motion for summary judgment is granted, Madelaine's motion is denied. The clerk is directed to close the case.

SO ORDERED.

Dated: Brooklyn, New York
September 26, 2017

s/ RJD
RAYMOND J. DEARIE
United States District Judge