

November 22, 2019

**VIA ECF**

Eric D. Freed
Direct Phone   215-665-3724
Direct Fax      215-701-2324
efreed@cozen.com

Honorable Raymond J. Dearie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    **Madelaine Chocolate Novelties, Inc. v. Great Northern Insurance Company**
            **C.A. No. 1:15-cv-05830-RJD-SMG**

Dear Judge Dearie:

        Great Northern Insurance Company ("Great Northern"), through undersigned counsel, submits the following letter brief objecting to an Order entered by Magistrate Judge Steven M. Gold on November 8, 2019 following a telephonic hearing (the "Order").

    **1.**    **Judge Gold's Order Granting Madelaine's Motion for Protective Order as to the FEMA and Travelers Subpoenas Was Clearly Erroneous and Contrary to the Law.**

        In its Motion for Protective Order, Madelaine sought to quash two document subpoenas issued by Great Northern on FEMA and Travelers Insurance Company ("Travelers" or jointly, the "Flood Insurers"), each of which provided flood insurance to Madelaine at the time of Sandy. These subpoenas seek: (i) documents relating to Madelaine's "application for, procurement of, negotiation of, and/or servicing of" Madelaine's flood policies, and; (ii) "applications for insurance, insurance quotations, insurance proposals, insurance binders, and/or copies of insurance policies" relating to Madelaine." (*See* subpoenas at ECF No. 73, Exhibit A, at PageID#: 8432-8468) Madelaine failed to establish good cause for entry of the Order.

        A party seeking a protective order under Rule 26(c) "has the burden of showing that good cause exists for issuance of that order." McCutcheon v. Colgate-Palmolive Co., No. 16-CV-4170, 2018 WL 5818255, at *2 (S.D.N.Y. Aug. 3, 2018). Good cause requires clearly defined, specific and serious injury, as broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. Schiller v. City of New York, 04-cv-7921, 2007 WL 136149 at *5 (S.D.N.Y. Jan. 17, 2007); see also In re Rapid-Am. Corp., No. 13-cv-10687, 2018 WL 882398, at *2 (Bankr. S.D.N.Y. Feb. 12, 2018); Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P., No. 13-cv-1654, 2014 WL 5420225, at *8 (S.D.N.Y. Oct. 24, 2014).

        Madelaine has not shown that the document subpoenas to Madelaine's Flood Insurers would cause it injury. It could make no such showing, because the requests do not impose any burden on Madelaine, as they are directed to third parties, and require Madelaine to do nothing. In granting Madelaine's Motion for Protective Order, Judge Gold did not apply the Rule 26(c) test. Instead, Judge Gold based his decision on Madelaine's sole argument that the document requests relate to the issue of liability, and not Madelaine's damages, and failed to consider whether

Madelaine had demonstrated that it would suffer actual harm from the requested discovery. (Ex. A, 11/8/19 Hearing Tr.) Judge Gold's ruling denies Great Northern the opportunity to obtain documents showing Madelaine's expectations and intent regarding its flood coverage --the precise issues to be resolved at the upcoming trial.

Over the entire course of this litigation, Great Northern has attempted to discover the circumstances surrounding Madelaine's purchase of flood coverage from the Flood Insurers. In February 2019, Madelaine successfully persuaded this Court to bar such discovery because the information sought was not relevant *at that time*. (*See* ECF Doc. 44).[1] Madelaine's intent and expectations concerning its flood coverage under the Great Northern Policy became critically important issues in this case when this Court ruled that extrinsic evidence of the expectations and intent of the parties would be central to resolution of this dispute. (*See* ECF Doc. 59) From that point forward, the focus of this case shifted to Madelaine's subjective state of mind when it purchased (or failed to purchase) flood insurance coverage from all of its insurers. It is difficult to imagine evidence more probative of Madelaine's expectations and intent regarding flood coverage under the Great Northern Policy than by examining any statements made at the time it purchased the Flood Insurers' policies or when it renewed those policies.

Under the applicable standard, because Madelaine failed to show good cause to prevent Great Northern from obtaining this highly-relevant information directly from the Flood Insurers,[2] this Court should permit Great Northern to issue the above-mentioned limited set of document requests to the Flood Insurers and deny Madelaine's motion for protective order.

---

[1] After the Second Circuit remanded this case on October 23, 2018 for "discovery into interpretive materials relating to the Windstorm Endorsement and its relationship to the Policy's coverage provisions," Madelaine vehemently argued that only discovery relating to the alleged ambiguity in the Great Northern Policy should be permitted. Madelaine represented during a Court conference that discovery should be limited to interpretive material on the alleged conflict between the two provisions in the Great Northern Policy: "But I just want to say we would like to continue that idea that this should be focused on this conflict with these clauses. And the discovery, obviously, would be very limited on that." (12/18/18 Hearing Tr., 8:1-9) Madelaine sought to limit the discovery to Madelaine's "insurance file" and communications with its broker. (ECF Doc. 41, PageID #: 2278) On February 4, 2019, Great Northern moved to compel Madelaine to produce documents beyond that unilateral and narrow category, including: (i) those documents relating to Madelaine's "application for, procurement of, negotiation of, and/or servicing of" those flood policies and (ii) "applications for insurance, insurance quotations, insurance proposals, insurance binders, and/or copies of insurance policies" relating to Madelaine." (ECF Doc. 40, PageID #: 2217)

The Court, denying Great Northern's letter motion in part, stated that the Second Circuit's directive was to allow for "some limited discovery or some discovery to better inform what the parties intended with respect to the meaning of some terms in those policies and how wind and water and surges, et cetera do or do not fall within the coverage or exclusions in those policies." (Ex. B, 2/25/19 Tr. at 3:8-15). Despite the fact that Madelaine's preliminary searches of their documents showed what appeared to be an abundance of responsive and relevant documents, (*see* Ex. C), the Court limited Great Northern's discovery from Madelaine to only three separate ninety-day periods "around the time that the policy was acquired," "one about the time that the rider was issued," and "one in the aftermath of Hurricane Sandy." (Ex. B, 2/25/19 Tr. at 16:13-23) The documents produced by Plaintiff did not contain any information concerning Madelaine's procurement of flood insurance.

[2] Indeed, during the parties' October 11, 2019 "meet and confer" conference, when Great Northern suggested that the subpoenas could be withdrawn if Madelaine produced the requested information, Madelaine's counsel suggested, for the first time, that the information was destroyed during the flooding associated with Sandy. If true, the only way for Great Northern to obtain this information is to seek it directly from the non-party Flood Insurers.

November 22, 2019
Page 3

---

Judge Gold's ruling is also *contra* New York law because it improperly conferred standing on Madelaine to quash a non-party subpoena. Fed. R. Civ. P. 26(c) does not allow a party, not subject to the document requests, to move for a protective order relating to such requests. See City of Almaty, Kazakhstan v. Ablyazov, No. 1:15-cv-05345, 2019 WL 275701, at *2 (S.D.N.Y. Jan. 22, 2019); Allstate Ins. Co. v. Zelefsky, No. 13-cv-5830, 2014 WL 12661264, at *1 (E.D.N.Y. Mar. 7, 2014). Federal law does not allow Madelaine to prevent Great Northern from seeking relevant evidence from third-parties. Judge Gold's Order granting Madelaine such a protective order is contrary to well-established law.

2. **There was Good Cause to Allow Limited Discovery as to the Flood Insurers.**

Great Northern also challenges Madelaine's assertion that reopening limited liability discovery was "improper," (ECF Doc. 71, PageID #: 8362) as good cause exists to allow discovery for purposes of procuring a single, narrowly-tailored category of documents from a non-party. A party has "good cause" to pursue supplemental discovery based on balancing six factors. Pharmacy, Inc. v. Am. Pharm. Partners, Inc., No. 05-cv-776, 2008 WL 4415263, at *3–5 (E.D.N.Y. Sept. 24, 2008). Where the opposing party is not prejudiced, and the discovery will lead to relevant evidence, courts find the factors weigh in favor of reopening discovery. Leong v. 127 Glen Head Inc., No. 13-cv-5528, 2016 WL 845325, at *6 (E.D.N.Y. Mar. 2, 2016) Further, preclusion of relevant evidence is a "drastic remedy that should be used only in cases where a different remedy cannot be crafted to minimize any prejudice to the party opposing the discovery. City of Almaty, 2019 WL 275701, at *4; see also Benavidez v. Burger Bros. Rest. Grp., Inc., No. 17-cv-200, 2019 WL 1459044, at *7 (E.D.N.Y. Mar. 29, 2019). Indeed, in a strikingly similar case, the Eastern District of New York ruled that a party could re-open discovery to seek documents the magistrate previously denied because the information was relevant to triable issues. See Cordero v. City of N.Y., No. 15-cv-3436, 2017 WL 6375739, at *5 (E.D.N.Y. Dec. 13, 2017). Here, Great Northern has shown good cause for allowing these limited requests: (1) discovery is still ongoing and trial is not imminent; (2) there is no evidence that the Flood Insurers will oppose the requests; (3) there is no prejudice to Madelaine, who was repeatedly asked to produce these documents during prior discovery but failed to do so; (4) Great Northern has repeatedly sought to obtain such information which this Court previously denied; (5) these requests are foreseeable; and (6) the circumstances have changed and these documents are now directly relevant to the issues to be tried.

3. **Judge Gold Erred in Granting Madelaine's Motion for Protective Order as to Russ Klenet & Associates and Davidoff Hutcher & Citron, LLP.**

Judge Gold also improperly quashed subpoenas to non-party firms Madelaine retained to procure financial assistance to the extent any requests sought information beyond "dollar amount of damages" claimed by Madelaine. (Ex. A, 11/8/19 Hearing Tr. 14:3-8) Not only does this ruling impose an undue burden on non-parties, requiring them to sift through documents to determine whether they relate to this narrow category, but also prevents Great Northern from seeking discovery relevant to Madelaine's "business interruption" loss, which requires consideration of Madelaine's finances, customer relationships, and efforts to restart production and operations, among other things. Moreover, Madelaine did not establish good cause for "damages discovery" to be limited solely to "dollar amount of damages."

Honorable Raymond J. Dearie
November 22, 2019
Page 4

_____

Respectfully yours,

COZEN O'CONNOR

By:   Eric D. Freed

EDF:saa


cc:   All Counsel of Record (*via ECF*)
      Honorable Steven M. Gold (*via EFC*)