UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
MADELAINE CHOCOLATE NOVELTIES, INC., :
:
          Plaintiff, :
: MEMORANDUM &
   -against- : ORDER
: 15-CV-5830 (RJD) (SMG)
GREAT NORTHERN INSURANCE CO., :
:
          Defendant. :
---------------------------------------------------------------x
GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

Two discovery motions are currently pending before the Court. In the first, defendant Great Northern Insurance Company ("Great Northern") contests certain assertions of attorney-client privilege by plaintiff Madelaine Chocolate Novelties, Inc. ("Madelaine"). In the second, Great Northern seeks leave to serve two non-parties with subpoenas for documents. This Memorandum and Order addresses each in turn.

## ATTORNEY-CLIENT PRIVILEGE

Great Northern's letter motion dated January 13, 2020 contends that Madelaine improperly withheld documents on grounds of attorney-client privilege because the communications involved Madelaine's employee Scott Wright, who was not an attorney at the time the communications took place. Def. Ltr. dated Jan. 13, 2020, Dkt. 95. It is undisputed that Mr. Wright graduated from law school in 1981 and worked as a law firm associate or in-house counsel until 1989. Scott Wright LinkedIn Profile, Def. Ltr. dated Jan. 13, 2020, Ex. D, Dkt. 95-4. It is also undisputed that Wright held positions as a financial analyst and vice president for investor relations and did not practice law from 1990 until he was hired by Madelaine twelve years later, in 2002. *Id.* It appears that Wright allowed his membership in the New York State

bar to expire in 1999, three years before he accepted a position with Madelaine.  Record of New York State Unified Court System, Def. Ltr. dated Jan. 13, 2020, Ex. E, Dkt. 95-5.

A party seeking to protect a communication from disclosure by invoking the attorney-client privilege must generally establish that the communication was with a person who is a member of the bar of a court.  *Gucci America, Inc. v. Guess?, Inc.*, 2011 WL 9375, at *1 (S.D.N.Y. Jan. 3, 2011).  The question posed by Great Northern's motion is whether communications with a law school graduate who practiced law years ago, but who was not a member of any bar at the time of the communications, may nevertheless be protected as privileged.

The answer at least arguably depends on whether the case in which the privilege is asserted is governed by federal or New York state law.  One court, in a case governed by New York law, has held that an *individual* may assert the privilege with respect to communications with a person that the individual reasonably believed to be an attorney, but that a corporation such as Madelaine must demonstrate that it diligently investigated the attorney's status before it may invoke the attorney-client privilege with respect to communications with someone who turns out not to be a member of a bar.  *See Financial Technologies Int'l v. Smith*, 2000 WL 1855131, at *7 (S.D.N.Y. Dec. 19, 2000) (holding, under New York law, that "even if New York would apply the reasonable belief exception to individuals, corporations would have to make sure their attorneys are in fact attorneys").  In *Gucci America*, however, the court questioned the holding in *Financial Technologies* and concluded that even a corporation may assert the attorney-client privilege with respect to communications with someone it reasonably believed to be an attorney but who in fact was not.  2011 WL 9375, at *5.  *Gucci America*, though, was decided under federal law, and its holding is therefore not in direct conflict with the one reached in *Financial Technologies*.

This is a diversity jurisdiction case involving a claim of breach of contract under New York law. *See generally Madelaine Chocolate Novelties, Inc. v. Great Northern Ins. Co.*, 752 F. App'x 47 (2d Cir. 2018). Accordingly, questions of privilege are governed by New York law. F. R. Evid. 501. As discussed above, the limited relevant case law leaves in doubt whether, under New York law, a corporation may successfully invoke privilege regarding its communications with someone it reasonably believes to be an attorney, or only as to communications with someone whose status as an attorney it has diligently investigated. I need not resolve this question, though, because I conclude that Madelaine fails to satisfy even the lower of the two potentially applicable standards; that is, I conclude that Madelaine could not reasonably have believed that Scott Wright was an active member of the bar when it hired him in 2002.

Norman Gold, a Madelaine Vice President, testified at a deposition of Madelaine conducted pursuant to Fed. R. Civ. P. 30(b)(6) on March 26, 2019. Gold Tr., Pl. Ltr. dated Jan. 17, 2020, Ex. A, Dkt. 96-1. At that deposition, Gold stated that Scott Wright is his brother-in-law—and has been since before Madelaine hired Wright—and displayed general knowledge about Wright's professional background. Gold Tr. at 39:7–41:9. Gold further testified that Wright was hired because Madelaine "had some administrative functions that needed direct supervision." Gold Tr. 41:10–13. Scott Wright was deposed as well. Wright Tr., Def. Ltr. dated Jan. 13, 2020, Ex. C, Dkt. 95-3; Def. Ltr. dated Feb. 3, 2020, Ex. 1, Dkt. 101. Scott testified that his title upon being hired by Madelaine was "director of corporate development." Wright Tr. 50:15–22. Wright further testified that, although he initially also referred to himself as general counsel, he stopped and did not use "esquire" when signing his name. Wright Tr. 25:9–26:3. Scott described his responsibilities after he was hired as "help[ing] with the way the systems inside the business, how do we operate, trying to create a little more discipline in this family

business." Wright Tr. 51:18–22. Wright currently serves as Madelaine's chief administrative officer, a title he has held for approximately the past eight years. Wright Tr. 51:24–52:5.

A party invoking the attorney-client privilege bears the burden of establishing that the privilege applies. *See Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 86 (S.D.N.Y. 2019); *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 103 (S.D.N.Y. 2007). Based upon the facts described above, I conclude that Madelaine has failed to meet its burden of proving that Madelaine reasonably believed that Wright was a member of the bar at the time of the communications in issue.

When Wright was hired, Madelaine's principal Norman Gold was his brother-in-law and generally familiar with Wright's professional career. To the extent Gold did not know of Wright's professional experience, Madelaine almost certainly would have asked Wright for a resume or a list of the prior positions he had held. It is accordingly reasonable to conclude that Madelaine knew when Wright was hired that he had not practiced law for more than a decade. Moreover, Wright was hired as a "director of corporate development," and his responsibilities involved management rather than handling legal matters. Although when he was first hired Wright referred to himself as general counsel, he stopped doing so at some point thereafter. Wright did not provide a date by which he stopped referring to himself as general counsel, but it is likely he did so well before the events at issue; Wright was hired in 2002, and Superstorm Sandy, which gave rise to this lawsuit, took place a decade later in 2012. Finally, for the last eight years, and since about the time of Sandy, Wright has held the title of chief administrative officer.

For the reasons stated above, Madelaine has failed to meet its burden to establish that it reasonably believed Wright was a practicing member of a bar at the time of the communications at issue. Accordingly, Madelaine shall promptly identify any communications it has withheld on

the basis of attorney-client privilege solely because of Wright's participation in those communications. Madelaine shall disclose any communications in this category to Great Northern no later than February 21, 2020.

SUBPOENAS TO NON-PARTIES

Great Northern's second motion seeks leave to serve two non-parties with document subpoenas and to do so after the current discovery deadline of January 31, 2020. Def. Ltr. dated Jan. 27, 2020, Dkt. 98. According to Great Northern, Madelaine was attempting to obtain financing for its business operations from these non-parties before its building was damaged by Superstorm Sandy. *Id.* at 2.

I conducted a telephone conference to discuss Great Northern's motion on February 3, 2020. Conference Transcript ("Conf. Tr."), Dkt. 104. During that conference, counsel for Great Northern argued that information sought by the subpoenas is relevant because Madelaine is seeking to recover damages for business interruption. Conf. Tr. at 5:21–6:19. Madelaine did not contend during the telephone conference or in its opposition letter that the information Great Northern seeks by way of these subpoenas is irrelevant or beyond the scope of discovery permitted pursuant to Fed. R. Civ. P. 26(b)(1). *See* Pl. Ltr. dated Jan. 31, 2020, Dkt. 100. Rather, Madelaine's primary arguments in opposition to the motion are that it has already produced sufficient information about its financial condition and that Great Northern's application is untimely.

The information sought is plainly relevant to Madelaine's claim for damages. With respect to the untimeliness of the subpoenas, Great Northern contends that it was expecting Madelaine to provide more complete information about its applications for financing. Great Northern further contends that it learned about these applications only after other non-parties produced documents in response to subpoenas it served previously. Although Madelaine

5

contests Great Northern's version of events in certain respects, it is clear that any delay by Great Northern will not meaningfully prejudice Madelaine because there is no imminent trial date.  *See* Order of United States District Judge Dearie entered on February 6, 2020.  Because the information sought by the subpoenas Great Northern seeks to serve is likely to be relevant, and because Madelaine will not be prejudiced if the subpoenas are served, Great Northern's motion is granted.

CONCLUSION

For the reasons stated above, Great Northern's motion to compel disclosure of communications withheld on the ground that Madelaine reasonably believed Scott Wright to be a licensed attorney is granted, and Great Northern's motion for leave to serve document subpoenas on two non-parties is granted as well.

SO ORDERED.

_____
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
February 7, 2020

U:\#Clerk Files\Decisions 2020\Madelaine v. Chocolate Novelties 15-CV-5830.docm