UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MADELAINE CHOCOLATE NOVELTIES, INC.,

           Plaintiff,

   -against-                                          MEMORANDUM & ORDER
                                                    15-CV-5830 (RJD) (SMG)
GREAT NORTHERN INSURANCE CO.,

           Defendant.
----------------------------------------------------------------x
GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

Defendant Great Northern Insurance Company ("Great Northern") moves to compel the production of certain documents or, in the alternative, for the Court to review those documents *in camera*. Great Northern Mot., Dkt. 107. Plaintiff Madelaine Chocolate Novelties, Inc. ("Madelaine") opposes the motion. Madelaine Opp., Dkt. 109. For the reasons stated below, the motion is granted in part and denied in part.

## DISCUSSION

Great Northern brings its motion in the wake of a Memorandum and Order issued by this Court on February 7, 2020 ("M&O"), Dkt. 105. The M&O directed Madelaine to identify any documents it had withheld from discovery on the basis of attorney-client privilege solely because of Scott Wright's participation in the communications revealed by them (the "Wright Documents"), and to disclose those documents to Great Northern no later than February 21, 2020. M&O at 4–5. Great Northern contends in its motion that Madelaine has failed to comply with the Court's Order. For the reasons set forth below, I find Great Northern's arguments largely unpersuasive.

Great Northern first contends that Madelaine now seeks to withhold several Wright Documents as work product, but previously asserted that these same documents should not be

produced only because they revealed privileged attorney-client communications. Madelaine states that, in response to the M&O, it has carefully reviewed each of the Wright documents, produced those that had been withheld solely on the basis of Scott Wright's status as an attorney, and is not now invoking the work product protection for the first time.

To the extent Great Northern contends that newly invoked claims of work product protection are inherently dubious, I reject that contention. Particularly under the circumstances presented here, there is no reason to doubt the good faith of Madelaine's work product claims even if they are first being invoked now. As explained in the M&O, Madelaine's principals apparently believed that Wright was an attorney. Even if Madelaine has failed to demonstrate that its belief was reasonably held, it is undisputed that Wright was once an attorney and that he was considered to be Madelaine's general counsel for a period of time. M&O at 1, 3. It is reasonable to infer, then, that Wright would have been the person at Madelaine interacting most frequently and directly with its outside counsel. Thus, it is neither surprising nor cause for skepticism that documents Wright authored or received were treated by Madelaine as attorney-client communications before the M&O, and are now being withheld by Madelaine, after the M&O, as work product.

Great Northern argues as well that Madelaine has improperly invoked work product with respect to documents created even before there was any indication that Great Northern would deny coverage for the losses at issue in this action. Madelaine has essentially mooted that argument, though, by agreeing to produce the two documents in dispute that were created before Great Northern's representative indicated that at least some aspects of Madelaine's claim for coverage would be denied.[1]

---

[1] Great Northern argues that, because Madelaine's Vice President did not recall the relevant conversation with Great Northern's representative at his deposition, Madelaine could not reasonably have anticipated litigation as a result of that conversation. The fact that the witness could not recall the conversation at his deposition, of course, is

Great Northern also contends it has a compelling need for the documents withheld by Madelaine as work product because Norman Gold, Madelaine's Vice President, invoked the attorney-client privilege at his deposition and declined to answer questions about conversations he had with Wright. A party may discover work product upon a showing that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26 (b)(3)(A)(ii). When Great Northern moved to compel based on Scott Wright's failure to remain a member of a bar, however, it did not seek to reopen Gold's deposition or otherwise obtain answers to the questions Gold declined to answer at his deposition. *See* Great Northern Mot. for Hr'g, Dkt. 95. Nor does Great Northern explain why it follows that the documents withheld by Madelaine as work product would, if disclosed, reveal the substance of the communications Gold did not disclose at his deposition. Great Northern further argues—albeit in an exhibit rather than in the text of its letter motion—that it has a compelling need for the documents withheld as work product because "they show Madelaine's understanding or expectation of its coverage." Great Northern Mot. Ex. C at 1, Dkt. 107-3. Great Northern has not demonstrated, however, that Madelaine's witnesses, document production, and interrogatory responses fail to provide information about Madelaine's understanding of its coverage.

Finally, Great Northern questions the validity of several of Madelaine's specific assertions of work product protection and attorney-client privilege. *See* Great Northern Mot. Ex. C; Great Northern Mot. Ex. D, Dkt. 107-4. Some of Madelaine's assertions of attorney-client privilege and work product protection are in fact difficult to understand. For example, Great

---

irrelevant to whether Madelaine understood that Great Northern would be denying coverage *at the time the conversation took place*. In any event, there can be no genuine question about when Madelaine anticipated litigation, because Madelaine has submitted a document authored by Great Northern's adjuster confirming that he advised Madelaine's representative in November of 2012 that flood damage would not be covered by Great Northern's policy. Madelaine Opp. Ex. B, Dkt. 109-2.

Northern points to redactions on a letter from Travelers dated March 20, 2013 that Madelaine describes as work product. Great Northern Mot. at 3–5. Great Northern also questions the claim that communications between Wright and the CEO of a firm that provided public relations services to Madelaine are "communication[s] *with legal counsel* reflecting legal advice." Great Northern Mot. at 4; Great Northern Mot. Ex. E at 43, Privilege Log entries 225 & 226, Dkt. 107-5. The Court agrees that these particular assertions of privilege and work product protection warrant further scrutiny. Accordingly, within one week of the date of this Memorandum and Order, Madelaine shall either produce these documents to Great Northern or submit them to the Court, ex parte, for *in camera* review, together with an ex parte letter explaining the basis for its assertions of privilege and work product with respect to them.

## CONCLUSION

For the reasons stated above, Great Northern's motion is granted in part and denied in part.

SO ORDERED.

_____
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
April 2, 2020

U:\Madelaine Chocolate Novelties Inc. v. Great Northern Ins. Co. 15-CV-5830 final 040220.docm