UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
MADELAINE CHOCOLATE NOVELTIES, INC.
D/B/A THE MADELAINE CHOCOLATE
COMPANY,

                     Plaintiff,

       - against -                          **MEMORANDUM & ORDER**
                                                          1:15-CV-5830 (RJD)

GREAT NORTHERN INSURANCE COMPANY,
                   Defendant.
------------------------------------------------------------ x

DEARIE, District Judge

       In October 2012, Hurricane Sandy made landfall in New York City and inflicted significant damage across the region. The facilities of the Madelaine Chocolate Company, located on the Rockaway Peninsula, three blocks from the Atlantic Ocean and one block from Jamaica Bay, were inundated with several feet of storm surge pushed ashore by Sandy's 80-mile-an-hour winds. All told, Madelaine claims more than $50 million in physical and economic losses caused by Sandy. Madelaine sought coverage for these losses from Great Northern Insurance Company, which had in 2011 issued to Madelaine an "all-risks" insurance policy (the "Policy"). Great Northern paid out $4 million to Madelaine but declined to pay the remaining amount, reasoning that the rest of the claimed losses were excluded from coverage under the Policy's Flood Exclusion.[1]

---

[1] The Flood Exclusion reads, in relevant part:

> This insurance does not apply to loss or damage caused by or resulting from: waves, tidal water or tidal waves; or rising, overflowing or breaking of any boundary, of any . . . oceans or any other body of water or watercourse, whether driven by wind or not, regardless of any other cause or event that directly or indirectly: contributes concurrently to; or contributes in any sequence to, the loss or damage, even if such other cause or event would otherwise be covered.

In 2015, Madelaine initiated this action against Great Northern seeking damages for the insurer's non-payment of the total claimed losses, arguing that the Policy's Windstorm Provision[2] provided coverage for damage caused by wind-driven Sandy storm surge, in spite of the Flood Exclusion. After two rounds of summary judgment and a trip to the Second Circuit,[3] in July 2022, the Court presided over a week-long jury trial. After the close of its case-in-chief, Madelaine moved for judgment as a matter of law, which the Court denied. The jury then returned a verdict in favor of Great Northern on liability and did not reach the issue of damages.

Madelaine now renews its motion for judgment as a matter of law, pursuant to Rule 50(b), or, alternatively, seeks a new trial pursuant to Rule 59. For the reasons that follow, the motion is denied in its entirety.

I.     **MOTION FOR JUDGMENT AS A MATTER OF LAW**

Federal Rule of Civil Procedure 50 allows a court to set aside a jury's verdict if "a reasonable jury would not have a legally sufficient evidentiary basis to find" as it did. FED. R. CIV. P. 50(a)(1). In reviewing a Rule 50 motion, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Cross v. N.Y.C. Trans. Auth., 417 F.3d 241, 247 (2d Cir. 2005) (quoting Reeves v.

---

[2] The Windstorm Provision (referred to by Madelaine as the "Windstorm Endorsement" and by Great Northern as the "Windstorm Deductible Endorsement") reads, in relevant part:

> Windstorm means: wind; [or] wind-driven rain; . . . regardless of any other cause or event that directly or indirectly: contributes concurrently to; or contributes in any sequence to, the loss or damage, even if such other cause or event would otherwise be covered.

[3] The Court assumes readers' familiarity with the lengthy background of this case, described in detail in prior decisions of this Court and of the Second Circuit. See Madelaine Chocolate Novelties v. Great N. Ins. Co., 399 F. Supp. 3d 3 (E.D.N.Y. 2019); Madelaine Chocolate Novelties v. Great N. Ins. Co., 752 Fed. Appx. 47 (2d Cir. 2018).

Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). A party seeking Rule 50 relief after the jury has deliberated and returned its verdict, as Madelaine does, bears a "particularly heavy" burden. Id. at 248. A court only may grant a Rule 50(b) motion for judgment as a matter of law notwithstanding the jury's verdict if there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." Wiercinski v. Mangia 57, Inc., 787 F. 3d 106, 112 (2d Cir. 2015) (cleaned up).

 Madelaine purports to meet this high standard, arguing that Great Northern failed to meet its burden to present sufficient extrinsic evidence to prove that Madelaine intended and understood that the Flood Exclusion barred coverage for storm surge losses, despite the language of the Windstorm Provision. The Court is not convinced and concludes that the evidence presented at trial could permit a reasonable jury to find that Madelaine understood and intended that storm surge losses would not be covered under the Policy. For instance, two Madelaine executives testified that, in 2001, the company decided to discontinue the $2.5 million in excess flood coverage it had purchased from Great Northern for years. See ECF 206-3 at 157:5-13; 158:10-19 (testimony of Jorge Farber, Madelaine's CEO); ECF 206-5 at 570:8-571:5 (testimony of Norman Gold, Madelaine's Vice President). It would be reasonable to infer that, having terminated its excess flood coverage from Great Northern, Madelaine understood that its remaining all-risks Policy from the carrier—which included a Flood Exclusion—would not protect it against flood-related damage, including wind-driven flood. While Madelaine's decision to terminate excess "flood" coverage is not dispositive as to whether the company intended to terminate "storm surge" coverage, it is certainly at least relevant to the company's general

understanding of its protection against water-related hazards, even if the pre-2001 policies used different language in the Windstorm Provision than the 2011 Policy. Likewise, an email received in evidence at trial revealed that, in 2011, when Madelaine was asked by a client to disclose its "flood coverage" for its facilities, Madelaine listed only its $3 million in coverage from the National Flood Insurance Program. See ECF 206-14 at 4; ECF 206-4 at 472:15-473:5. Madelaine's decision not to list Great Northern as a provider of flood coverage could logically have been relied on by the jury to conclude that Madelaine knew and understood that its Great Northern Policy excluded coverage for damage caused by any water that might inundate the company's facilities, whether driven by wind or not. Based on these facts and others from the trial record, there is not a complete absence of evidence supporting the jury's verdict in Great Northern's favor. Cf Wiercinski, 787 F. 3d at 112. Madelaine's Rule 50(b) motion fails.

In addition to the parties' differing positions as to whether the trial record supports the jury's verdict as a factual matter, the post-trial briefs bicker about the issue to be resolved at the trial as a legal matter. Madelaine apparently takes the position that Great Northern could rely only on extrinsic evidence—to the exclusion of the Policy's text—to meet its burden of proving that both parties understood that storm surge losses were not covered. See ECF 203-1 at 19 (asserting that "Great Northern was obligated to introduce cognizable *extrinsic* evidence, *outside the four corners of the Policy*," to prove its case) (emphasis added); ECF 207 at 7 (commenting that Great Northern should not invoke the Policy's language to oppose the present Rule 50(b) motion because this "by definition, is not extrinsic evidence"). The Court finds Madelaine's position questionable. The Court's instructions to the jury on the law governing the case—to which Madelaine did not object—explained that the language of an insurance policy is "[t]he best evidence of the parties' intent," and that the jury should consider the parties' written Policy

4

alongside the extrinsic evidence that was presented during the trial, including "the relationship between the parties, what was said and done by the parties, and all the surrounding events and circumstances," to determine the intent of the parties at the time of contracting. ECF 199 at 8-9. Indeed, Madelaine's proposed jury instructions did not elevate the role of extrinsic evidence over the text of the Policy in describing the jury's task.[4] Based on the Court's instructions of the law, it was entirely permissible—indeed, it was critical—for the jury to consider the Policy's language in arriving at its verdict. And the Policy's language provides additional support for the jury's conclusion that both parties intended that the Flood Exclusion apply to all flood-related damage, even if such damage was also caused by a windstorm.[5]

The Rule 50(b) motion is denied.

## II. MOTION FOR NEW TRIAL

Having denied Madelaine's Rule 50(b) motion, the Court addresses Madelaine's alternative argument that it is entitled to a new trial on liability pursuant to Rule 59. Although Rule 59 permits a court to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court," the Second Circuit has warned that a jury's verdict should rarely be disturbed and that a motion for a new trial should only be granted if the

---

[4] Madelaine asked the Court to instruct the jury as follows: "The best evidence of the [parties'] intent is typically the language used in the insurance policy. . . . Where the language is ambiguous, however, the parties may present extrinsic evidence (i.e., evidence other than the policy language) regarding the relationship of the parties, the sale of the insurance, and the surrounding circumstances in an attempt to establish the intent of the parties at the time of contracting and resolve the ambiguity. To the extent you believe that the extrinsic evidence presented bears on whether the Flood Exclusion does or does not apply to wind-driven storm surge losses, you may consider such evidence subject to the following rules . . . " ECF 177 at 27.

[5] See Madelaine, 399 F. Supp. 3d at 11 ("Giving all of the relevant language in the Policy's coverage-granting clauses force and effect . . . where there is a windstorm and an *excluded* cause [like a flood], the Windstorm Definition's ACC clause would be inapplicable and the exclusionary phrases direct the reader to the Policy's relevant exclusions.").

5

verdict was "seriously erroneous or a miscarriage of justice." Farrior v. Waterford Bd. of Educ., 277 F.3d 633, 635 (2d Cir. 2002).

The Court denies Madelaine's request to overturn the jury's verdict here. As explained above, the evidence presented at trial, including the language of the Policy and the extrinsic evidence, can reasonably be interpreted to conclude that both parties intended for the Policy not to cover losses caused by storm surge. Accordingly, the jury's verdict in Great Northern's favor was not against the clear weight of the evidence. Madelaine's Rule 59 motion on this basis fails. Cf. ECF 203-1 at 25-26.

Nor is a new trial warranted based on the Court's evidentiary rulings. Madelaine asserts that the Court "erroneously allowed the introduction of two types of highly prejudicial evidence (and resulting argument) over Madelaine's objection," which confused and prejudiced the jury to Madelaine's detriment. ECF 203-1 at 8. Madelaine's two evidentiary complaints are similar. Taking its second argument first, Madelaine claims that it was prejudiced by the Court's decision to permit Great Northern's witnesses to testify about their subjective understandings as to the Policy's meaning, when those interpretations were not communicated to Madelaine at the time of contracting. See ECF 203-1 at 30-31. Madelaine's other evidentiary concern is a variation on this theme: Madelaine laments that the Court permitted Great Northern witnesses to testify that, in their view of the Policy, the Windstorm Provision applied solely to the applicability of a deductible, an interpretation that, Madelaine claims, contravenes the Second Circuit's earlier ruling in this case that the Windstorm Provision applied to the entire Policy. See id. at 27-30.

As discussed on the record at trial, the Court disagrees that either of these evidentiary decisions were erroneous. In any event, the Court's instructions cured any potential concern that the jury was misled by the evidence Madelaine complains of. The Court instructed the jury that

6

"Great Northern's intent or understanding that was not communicated to Madelaine would have no bearing on Madelaine's intent or understanding; only intent indicated by words and acts that were made known to the other party may be considered . . . [in deciding] whether or not Great Northern has proven by a preponderance of the evidence that both parties understood and intended that the insurance policy would not cover losses caused by storm surge." ECF 199 at 9. This instruction warned the jury that any subjective opinions professed by Great Northern's witnesses as to the meaning of the Policy generally, or as to the role of the Windstorm Provision specifically, should not be considered unless communicated by word or action to Madelaine, and we assume that the jury followed these instructions with care in rendering its verdict. See Zafiro v. United States, 506 U.S. 534, 540 (1993) ("[E]ven if there were some risk of prejudice, here it is of the type that can be cured with proper instructions, and 'juries are presumed to follow their instructions.'" (quoting Richardson v. Marsh, 481 U.S. 200, 211 (1987))). Accordingly, the jury's verdict was not "seriously erroneous," and will not be disturbed.

## CONCLUSION

For the foregoing reasons, Madelaine's motion is denied.

SO ORDERED.

Dated: Brooklyn, New York  /s/ Raymond J. Dearie
January 20, 2023  RAYMOND J. DEARIE
United States District Judge

7